UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COREY SIPKIN PHOTOGRAPHY LLC,<br><br>             Plaintiff,<br><br>        v.<br><br>JOMBOY CORP.,<br><br>             Defendant. | Case No:<br><br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Plaintiff Corey Sipkin Photography LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant Jomboy Corp. ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright Infringements under the Copyright Act, 17 U.S.C §101 *et seq*. and for violation of the Digital Millennium Copyright Act ("*DMCA*"), 17 U.S.C. §1202(b).

2. Corey Sipkin ("*Sipkin*") created a series of photographs in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3. Defendant owns and operates an account with the name Shea Station on the social media website www.facebook.com (the "*FB Account*").

4. Defendant owns and operates an account with the name @TalkinBaseball_ on the social media website www.twitter.com (the "*XTB Account*").

5. Defendant owns and operates and account with the name @TalkinGiants on the social media website www.twitter.com (the "*XTG Account*").

6. Defendant owns and operates and account with the name @TalkinYanks on the social media website www.twitter.com (the "*XTY Account*").

1

7. Defendant owns and operates an account with the name Jomboy Media on the website www.youtube.com (the "*YouTube Account*").

8. Defendant owns and operates an account with the name @Shea_Station on the social media website www.instagram.com (the "*IG Account*").

9. Defendant, without permission or authorization from Plaintiff, actively copied and/or displayed Plaintiff's photographs on the FB account, the XTB Account, the XTG Account, the XTY Account, the YouTube Account and the IG Account (collectively the "*Accounts*") and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

10. Corey Sipkin Photography LLC is a New York limited liability company and maintains its principal place of business in Kings County, New York.

11. Upon information and belief, defendant Jomboy Corp., is a New York corporation with a principal place of business at 48 West 37th Street, 15th Floor, New York in Manhattan County, New York.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the federal copyright Infringements claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

13. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

14. Venue is proper under 28 U.S.C. §1391(b)(2) because Defendant does business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

A.  **Plaintiff's Copyright Ownership**

15. Plaintiff is a professional photography company by trade that is the legal and rightful owner of certain photographs which Plaintiff commercially licenses.

16. Plaintiff has invested significant time and money in building Plaintiff's photograph

portfolio.

17. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs while many others are the subject of pending copyright applications.

18. Plaintiff's photographs are original, creative works in which Plaintiff owns protectable copyright interests.

19. On March 18, 2023, Sipkin first published a photograph of American baseball outfielder Brandon Nimmo during a match up ("*Photograph 1*"). A copy of Photograph 1 is attached hereto collectively as Exhibit 1.

20. Sipkin published Photograph 1 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

21. Photograph 1 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2023/03/18/mets-brandon-nimmo-week-to-week-with-ankle-knee-injuries/.

22. In creating Photograph 1, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

23. On March 26, 2023, Photograph 1 was registered by the USCO under Registration No. VA 2-344-087.

24. Sipkin created Photograph 1 with the intention of it being used commercially and for the purpose of display and/or public distribution.

25. On June 30, 2023 Sipkin first published a photograph of Blake Sabol consoling a fan with a fist bump ("*Photograph 2*"). A copy of Photograph 2 is attached hereto collectively as Exhibit 1.

26. Sipkin published Photograph 2 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

27. Photograph 2 was first published with the New York Post as part of a sports news

article at URL https://nypost.com/2023/06/30/blake-sabol-fist-bumps-fan-after-mets-jeff-mcneil-interference/.

28. In creating Photograph 2, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

29. On September 11, 2023, Photograph 2 was registered by the USCO under Registration No. VA 2-365-876.

30. Sipkin created Photograph 2 with the intention of it being used commercially and for the purpose of display and/or public distribution.

31. On September 7, 2022 Sipkin first published a photograph of Drew Wilkins, the Outside Linebacker Coach for the New York Giants ("*Photograph 3*"). A copy of Photograph 3 is attached hereto collectively as Exhibit 1.

32. Sipkin published Photograph 3 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

33. Photograph 3 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2022/09/07/kayvon-thibodeaux-embraces-giants-legacy-of-pass-rushers/.

34. In creating Photograph 3, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

35. On September 28, 2022, Photograph 3 was registered by the USCO under Registration No. VA 2-322-266.

36. Sipkin created Photograph 3 with the intention of it being used commercially and for the purpose of display and/or public distribution.

37. On January 23, 2023 Sipkin first published a photograph of New York Giants general manager Joe Schoen holding a press conference on January 23, 2023 ("*Photograph 4*"). A copy of Photograph 4 is attached hereto collectively as Exhibit 1.

38. Sipkin published Photograph 4 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

39. Photograph 4 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2023/01/23/joe-schoen-admits-hard-truth-about-eagles-giants-talent-gap/.

40. In creating Photograph 4, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

41. On March 26, 2023, Photograph 4 was registered by the USCO under Registration No. VA 2-344-087.

42. Sipkin created Photograph 4 with the intention of it being used commercially and for the purpose of display and/or public distribution.

43. On October 11, 2022, Sipkin first published a photograph of New York Mets pitcher Edwin Orlando DA-az boy ("*Photograph 5*"). A copy of Photograph 5 is attached hereto collectively as Exhibit 1.

44. Sipkin published Photograph 5 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

45. Photograph 5 was first published by the New York Post as part of a sports news article at URL https://nypost.com/2022/10/11/retaining-edwin-diaz-a-mets-priority-but-it-will-be-costly/.

46. In creating Photograph 5, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

47. On December 20, 2022, Photograph 5 was registered by the USCO under Registration No. VA 2-334-302.

48. Sipkin created Photograph 5 with the intention of it being used commercially and for the purpose of display and/or public distribution.

49. On June 24, 2023 Sipkin first published a photograph of Yankees player Jake Bauer after hitting a home run ("*Photograph 6*"). A copy of Photograph 6 is attached hereto collectively as Exhibit 1.

50. Sipkin published Photograph 6 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

51. Photograph 6 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2023/06/24/yankees-jake-bauers-talks-path-to-finally-feeling-like-i-belong/.

52. In creating Photograph 6, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

53. On September 11, 2023, Photograph 6 was registered by the USCO under Registration No. VA 2-365-876.

54. Sipkin created Photograph 6 with the intention of it being used commercially and for the purpose of display and/or public distribution.

55. On May 5, 2023, Sipkin first published a photograph of Willie Calhoun of the New York Yankees against the Boston Red Sox ("*Photograph 7*"). A copy of Photograph 7 is attached hereto collectively as Exhibit 1.

56. Sipkin published Photograph 7 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

57. Photograph 7 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2023/05/05/what-yankees-saw-in-natural-hitter-willie-calhoun/.

58. In creating Photograph 7, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

59. On June 30, 2023, Photograph 7 was registered by the USCO under Registration No. VA 2-355-586.

60. Sipkin created Photograph 7 with the intention of it being used commercially and for the purpose of display and/or public distribution.

61. On December 24, 2022 Sipkin first published a photograph of New York Yankees' Carlos Rodon speaks during his introductory baseball news conference at Yankee Stadium ("*Photograph 8*"). A copy of Photograph 8 is attached hereto collectively as Exhibit 1.

62. Sipkin published Photograph 8 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

63. Photograph 8 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2022/12/24/carlos-rodon-riskier-big-money-signing-than-past-yankees-aces/.

64. In creating Photograph 8, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

65. On January 1, 2023, Photograph 8 was registered by the USCO under Registration No. VA 2-336-444.

66. Sipkin created Photograph 8 with the intention of it being used commercially and for the purpose of display and/or public distribution.

67. On August 23, 2023 Sipkin first published a photograph of Isaiah Hodgins running up the field after making a catch during the Giants' 21-19 preseason win over the Panthers ("*Photograph 9*"). A copy of Photograph 9 is attached hereto collectively as Exhibit 1.

68. Sipkin published Photograph 9 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

69. Photograph 9 was first published with the New York Post as part of a sports news article at URL https://nypost.com/2023/08/23/isaiah-hodgins-using-other-gifts-to-stand-out-amid-giants-weapons/.

70. In creating Photograph 9, Sipkin personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made

each and every artistic determination necessary for the creation of the work.

71. On September 11, 2023, Photograph 9 was registered by the USCO under Registration No. VA 2-365-876.

72. Sipkin created Photograph 9 with the intention of it being used commercially and for the purpose of display and/or public distribution (hereinafter all of the individual photographs herein listed above are referred to as the "*Photographs*").

73. On January 17, 2023, Sipkin transferred the rights and licenses to the Photographs to Plaintiff by way of a written transfer agreement.

B.   **Defendant's Infringing Activity**

74. Defendant is the registered owner of the Accounts and is responsible for their content.

75. Defendant is the operator of the Accounts and is responsible for their content.

76. The Accounts are a part of and used to advance Defendant's commercial enterprise.

77. Upon information and belief, Defendant is a sophisticated media company which owns a comprehensive portfolio of digital marketing platforms and has advanced operational and strategic expertise in the media industry where copyright is prevalent.

78. Upon information and belief, Defendant's staff have significant experience in copyright matters and are familiar with specific journalistic practices including the need to ensure that images used in their articles have been properly licensed.

79. Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

80. Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

81. Defendant's failure to adopt or effectively enforce internal copyright policies, if

any, indicates *de facto* willful infringement.

82. On or about March 19, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 1 on the XTB Account as part of a social media post at URL https://x.com/TalkinBaseball_/status/1637473500813221891 ("*Infringement 1*"). A copy of a screengrab of the XTB Account including Photograph 1 is attached as a part of Exhibit 2.

83. Infringement 1 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the XTB Account.

84. On or about March 19, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 1 on the FB Account as part of a social media post at URL https://www.facebook.com/photo/?fbid=245621754488014&set=a.201947445522112 ("*Infringement 2*"). A copy of the screengrab of the FB Account including Photograph 1 is attached as part of Exhibit 2.

85. On or about July 19, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 2 on the YouTube Account as the cover photo of a news video which covered the occurrence depicted in Photograph 2 at URL https://www.youtube.com/watch?v=ryk_XZPBAjY ("*Infringement 3*"). A copy of a screengrab of the YouTube Account including Photograph 2 is attached as a part of Exhibit 2.

86. Infringement 3 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the Website.

87. On or about January 8, 2024, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 3 on the XTG Account as part of a social media post at URL https://twitter.com/TalkinGiants/status/1744439225448075672 ("*Infringement 4*"). A copy of a screengrab of the XTG Account including Photograph 3 is attached as a part of Exhibit 2.

88. Infringement 4 is an exact copy of Plaintiff's original image that was directly copied

and displayed by Defendant on the XTG Account.

89. On or about January 24, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 4 on the XTG Account as part of a social media post at URL https://x.com/TalkinGiants/status/1617895937548115969 ("*Infringement 5*"). A copy of a screengrab of the XTG Account including Photograph 4 is attached as a part of Exhibit 2.

90. Infringement 5 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the XTG Account.

91. On or about August 22, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 5 on the IG Account as part of a social media post at URL https://x.com/TalkinGiants/status/1617895937548115969 ("*Infringement 6*"). A copy of a screengrab of the IG Account including Photograph 5 is attached as a part of Exhibit 2.

92. Infringement 6 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the IG Account.

93. On or about November 17, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 6 on the XTY Account as part of a social media post at URL https://x.com/TalkinYanks/status/1725617073944969475/photo/1 ("*Infringement 7*"). A copy of a screengrab of the XTY Account including Photograph 6 is attached as a part of Exhibit 2.

94. Infringement 7 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the XTY Account.

95. On or about June 11, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 7 on the XTY Account as part of a social media post at URL https://x.com/TalkinYanks/status/1667975781148917762 ("*Infringement 8*"). A copy of a screengrab of the Website including Photograph 7 is attached as a part of Exhibit

2.

96.     Infringement 8 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the XTY Account.

97.     On or about February 18, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 8 on the XTY Account as part of a social media post at URL https://x.com/TalkinYanks/status/1627058380736172033?lang=en ("*Infringement 9*"). A copy of a screengrab of the XTY Account including Photograph 8 is attached as a part of Exhibit 2.

98.     Infringement 9 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the XTY Account.

99.     On or about March 21, 2024, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed Photograph 9 on the XTG Account as part of a social media post at URL https://x.com/TalkinGiants/status/1770982169415999764/photo/1 ("*Infringement 10*"). A copy of a screengrab of the XTG Account including Photograph 9 is attached as a part of Exhibit 2.

100.    Infringement 10 is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant on the XTG Account.

101.    Upon information and belief, each of Plaintiff's Photographs were copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photographs (hereinafter all of the unauthorized uses set forth above are referred to as the "*Infringements*").

102.    The Infringements each include a URL ("*Uniform Resource Locator*") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific Infringements.

103.    Upon information and belief, Defendant takes an active and pervasive role in the content posted on its Accounts, including, but not limited to copying, posting, selecting,

commenting on and/or displaying images including but not limited to Plaintiff's Photographs.

104. Upon information and belief, the Photographs were willfully and volitionally posted to the Accounts by Defendant.

105. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness on the part of Defendant.

106. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

107. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Accounts and exercised and/or had the right and ability to exercise such right.

108. Upon information and belief, Defendant monitors the content on its Accounts.

109. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements.

110. Upon information and belief, the Infringements increased traffic to the Accounts and, in turn, caused Defendant to realize an increase in its revenues.

111. Upon information and belief, a large number of people have viewed the unlawful copies of the Photographs on the Accounts.

112. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

113. Defendant's use of the Photographs harmed the actual market for the Photographs.

114. Defendant's use of the Photographs, if widespread, would harm Plaintiff's potential market for the Photographs.

115. On July 25, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 1, Plaintiff's rights-protected work.

Defendant failed to respond.

116. Thereafter, on August 26, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 1 in attempt to avoid litigation.

117. On May 28, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 2, Plaintiff's rights-protected work. Defendant failed to respond.

118. Thereafter, on June 27, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 2 in attempt to avoid litigation.

119. On May 16, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 3, Plaintiff's rights-protected work. Defendant failed to respond.

120. Thereafter, on June 18, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 3 in attempt to avoid litigation.

121. On October 22, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 4, Plaintiff's rights-protected work.

122. On July 4, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 5, Plaintiff's rights-protected work. Defendant failed to respond.

123. Thereafter, on August 7, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 5 in attempt to avoid litigation.

124. On August 6, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 6, Plaintiff's rights-protected work. Defendant failed to respond.

125. Thereafter, on September 5, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 6 in attempt to avoid litigation.

126. On September 19, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 7, Plaintiff's rights-protected work.

Defendant failed to respond.

127. Thereafter, on August 20, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 7 in attempt to avoid litigation.

128. On September 19, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 8, Plaintiff's rights-protected work. Defendant failed to respond.

129. Thereafter, on August 20, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 8 in attempt to avoid litigation.

130. On September 5, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints related to Defendant's infringement of Photograph 9, Plaintiff's rights-protected work. Defendant failed to respond.

131. Thereafter, on October 7, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints regarding Photograph 9 in attempt to avoid litigation.

132. Despite Plaintiff's numerous efforts and willingness to address Defendant's infringing activities, Defendant failed to respond and Plaintiff was forced to seek judicial intervention for Defendant's infringing activities.

133. Further, despite Plaintiff's notifications to Defendant concerning its infringing activities, Defendant continues to infringe on Plaintiff's works thereby establishing the willful nature of its conduct.

134. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

### FIRST COUNT
*(Direct Copyright Infringements, 17 U.S.C. §501 et seq.)*

135. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

136. The Photographs are each original, creative works in which Plaintiff owns valid copyrights.

137. The Photographs are properly registered with the USCO and Plaintiff has complied

with all statutory formalities under the Copyright Act and under regulations published by the USCO.

138. Plaintiff has not granted Defendant a license or the right to use the Photographs in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyrights to Defendant.

139. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

140. Defendant's reproduction of the Photographs and display of the Photographs constitutes willful copyright Infringements.

141. Upon information and belief, Defendant willfully infringed upon Plaintiff's Photographs in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photographs without Plaintiff's consent or authority, by using them on the Accounts.

142. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the Infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each of the Infringements pursuant to 17 U.S.C. § 504(c).

143. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

144. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain Infringements of his copyright pursuant to 17 U.S.C. § 502.

**SECOND COUNT**

*(Removal and/or Alteration of Copyright Management Information 17 U.S.C. § 1202(b))*

145. Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

146. The Photographs as originally published in the New York Post, as set forth above, each contained a "gutter credit" attributing Sipkin as the author of each work. Such credit qualifies as copyright management information ("CMI") under section 1202(c) of the DMCA, 17 U.S.C. §1202(c). A copy of a screenshot of the Original Source page for each Photograph is attached hereto as Exhibit 3.

147. Defendant distributed the Infringements without Plaintiff's CMI, as there was no credit provided to Plaintiff upon Defendant's display of the Photographs on the Accounts.

148. Upon information and belief, Defendant's distribution of containing the Photographs was done with actual knowledge that Plaintiff's CMI was removed and/or altered without Plaintiff's permission.

149. Upon information and belief, Defendant had reasonable grounds to know that its distribution of the infringing articles/posts containing the Photographs would induce, enable, facilitate or conceal an Infringements.

150. Upon information and belief, in addition to removing the Plaintiff's CMI, Defendant also removed the metadata from the Photographs.

151. Defendant's conduct violates 17 U.S.C. § 1202(b).

152. Plaintiff has sustained substantial injury and monetary damages as a result of Defendant's wrongful acts as herein alleged, and as a result of being involuntarily associated with Defendant, in an amount to be proven at trial.

153. As a result of Defendant's violations of the DMCA, pursuant to 17 U.S.C. § 1203(c)(2), Plaintiff is entitled to an award of the actual damages suffered as a result of the violation including any profits of the Defendant attributable to the violation or, alternatively, Plaintiff may elect to recover from Defendant statutory damages pursuant to 17 U.S.C. §

1203(c)(3) in a sum of at least $2,500 up to $25,000 for each violation of 17 U.S.C. § 1202(b).

154. As a result of the Defendant's violations of the DMCA, the court in its discretion may allow the recovery of reasonable attorney's fees and full costs pursuant to 17 U.S.C. § 1203(b)(4) and (5) from Defendant.

## JURY DEMAND

155. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment as follows:

That the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Photograph in violation of 17 U.S.C. §501 *et seq.* and has violated the DMCA under 17 U.S.C. §1202(b) and therefore award damages and monetary relief as follows:

    a. finding that Defendant infringed Plaintiff's copyright interest in and to the Photograph by copying and displaying it without a license or consent;

    b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the Infringementss as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each Infringements pursuant to 17 U.S.C. § 504(c), whichever is larger;

    c. finding that Defendant violated section 1202(b) of the DMCA; 17 U.S.C. § 1202(b);

    d. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

    e. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. §1203(b)(4) and (5);

    f. for pre-judgment interest as permitted by law; and

    g. for any other relief the Court deems just and proper.

DATED: December 9, 2024

                                 **SANDERS LAW GROUP**

                                 By:   */s/ Craig Sanders*
                                 Craig Sanders, Esq.
                                 333 Earle Ovington Blvd, Suite 402
                                 Uniondale, NY 11553
                                 Tel: (516) 203-7600
                                 Email: csanders@sanderslaw.group
                                 File No.: 130253

                                 *Attorneys for Plaintiff*